## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **AMY NELSON,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 23-40069-MRG** |
| | ) | |
| **TOWN OF WESTMINSTER, et al.,** | ) | |
| **Defendants.** | ) | |

## <u>REPORT AND RECOMMENDATION</u>

### August 30, 2024

**Hennessy, M.J.**

Amy Nelson, a Sergeant at the Westminster Police Department ("WPD"), filed suit on June 14, 2023, against the Town of Westminster and her former supervisor, Ralph LeBlanc. Nelson alleges that Westminster and LeBlanc interfered with and discriminated/retaliated against her for utilizing the protections of the Family and Medical Leave Act ("FMLA"). Nelson also alleges that LeBlanc threatened her in violation of the Massachusetts Civil Rights Act and intentionally interfered with her employment at the WPD. Finally, Nelson alleges that Westminster discriminated against her because of her gender, sex, and pregnancy status in violation of Massachusetts law, negligently supervised LeBlanc which allowed his misconduct to occur, retaliated against her in violation of Title VII of the Civil Rights Act, and created a hostile work environment in violation of Title VII. Westminster and LeBlanc separately moved to dismiss the claims against them, and Judge Guzman referred these motions to me for a report and recommendation. For the reasons set forth below, I RECOMMEND the following:

- As to Counts I and III for discrimination/retaliation in violation of the FMLA, Defendants' motions to dismiss should be DENIED.

- As to Count II for interference with FMLA-protected rights, LeBlanc's motion to dismiss should be GRANTED.

- As to Count IV for violations of the Massachusetts Civil Rights Act, LeBlanc's motion to dismiss should be GRANTED.

- As to Count V for intentional interference with an advantageous relationship, LeBlanc's motion to dismiss should be DENIED.

- As to Count VI for negligent supervision, Westminster's motion to dismiss should be GRANTED.

- As to Count VII for gender and sex discrimination in violation of Massachusetts law, Westminster's motion to dismiss should be DENIED.[1]

- As to Count IX for retaliation in violation of Title VII of the Civil Rights Act, Westminster's motion to dismiss should be DENIED.

- As to Count X for sexual harassment in violation of Title VII of the Civil Rights Act, Westminster's motion to dismiss should be DENIED.

## I.    Factual Background

Nelson has been an officer at the WPD since 2005.  [Dkt. No. 12, Amended Complaint ("AC"), ¶ 1].  She was the first full-time female officer at WPD.  Id. ¶ 6.  In January 2020, she was promoted to sergeant.  Id. ¶ 1.  She has no disciplinary history.  Id. ¶ 8.

### A.    Nelson's Use of FMLA Leave

In late fall 2015, Nelson notified then-Chief Salvatore Albert (not party to this suit) that she was pregnant.  Id. ¶ 10.  She was assigned to dispatch duties for the remainder of her pregnancy.  Id.  Nelson requested and received FMLA leave for her child's birth.  Id. ¶ 11.  However, during her leave, the pay policy for officers on leave was changed from the average of hours usually worked to the hours that the employee actually took leave, which resulted in lower

---

[1] On January 12, 2024, Nelson voluntarily dismissed Count VIII (discrimination in violation of § 2000e-16 of Title VII) as to all Defendants; and Counts VII (gender and sex discrimination in violation of Mass. Gen. Laws ch. 151B), IX, and X (claims of retaliation and sexual harassment in violation of Title VII) as to LeBlanc.  [Dkt. No. 28].

pay while she was on leave.  Id. ¶¶ 12-13.  The new pay policy was in place for at least the twelve weeks of Nelson's FMLA leave.  Id. ¶ 14.

During the summer of 2018, Nelson notified then-Chief Michael McDonald (not party to this suit) that she was pregnant with her second child.  Id. ¶ 30.  Around the same time, Nelson expressed interest in an additional part-time position as a School Resource Officer ("SRO").  Id. ¶¶ 28-29.  The SRO position was awarded to a new officer recently graduated from the police academy who was some fifteen years junior to Nelson.  Id. ¶ 31.  Nelson later learned LeBlanc had stated that she was not considered for the SRO position because she was pregnant and would be taking maternity leave.  Id. ¶ 32.  LeBlanc was not yet chief and it is unclear if he participated in or influenced the SRO assignment decision.

In December 2020, Nelson told LeBlanc, who had been promoted to Chief earlier in 2020, that she was pregnant and would need reasonable accommodation for her pregnancy near her May 2021 due date.  Id. ¶ 52.  After she informed LeBlanc of her pregnancy, she was assigned to dispatch duty from 11 p.m. to 7 a.m., rather than her preferred shift of 3 p.m. to 11 p.m.  Id. ¶ 54.  When an accident to an officer on the 3 to 11 p.m. shift created an opening, LeBlanc refused Nelson's request for reassignment to her preferred shift, and she remained on the overnight shift throughout her pregnancy.  Id. ¶¶ 56-58.

In May 2021, Nelson took FMLA leave and returned to work in September 2021.  Id. ¶¶ 65, 67.  When she returned, she was instructed to move her locker from the women's locker room to the lieutenant's office.  Id. ¶ 67.  Only male supervisors occupied the lieutenant's office, meaning Nelson would have to bring her uniform and toiletries from the lieutenant's office to the women's locker room to change.  Id. ¶ 68.  Nelson refused to move her locker.  Id. ¶ 69.  She was informed that LeBlanc repeatedly complained about her refusal.  Id.

On November 18, 2021, Nelson notified LeBlanc that her daughter was diagnosed with leukemia. Id. ¶ 72. Nelson explained that treatment and hospitalization for her daughter would require her to take four to six weeks of leave. Id. ¶ 73. Westminster denied Nelson's additional FMLA leave request because her FMLA leave had been exhausted during her pregnancy earlier that year. Id. ¶¶ 74-75. When Nelson told LeBlanc this, LeBlanc told her that if she ran out of time and still needed to take leave, she would have to separate from employment and, when her job was posted, re-apply and possibly be re-hired. Id. ¶¶ 77-78.

On December 10, 2021, without warning, Nelson was moved off her group rotation despite a history of sergeants picking their group and effectively controlling their scheduled holidays. Id. ¶¶ 79-80. This change meant that where Nelson historically was off on Christmas, she was now, two weeks before the holiday, obligated to work. Id. ¶ 80. When Nelson complained, LeBlanc told her she would have to use her benefit time, which she alleges LeBlanc knew she did not have. Id. ¶ 81. Nelson became afraid that she would lose her job based on LeBlanc's comments and the amount of leave she would require for her daughter's treatment. Id. ¶ 82. Additionally, when members of WPD learned of Nelson's leave predicament, they donated leave time to her. However, LeBlanc intentionally never informed Nelson of the donations, allegedly because LeBlanc believed (erroneously) Nelson created a GoFundMe account to help defray her daughter's medical expenses. Id. ¶¶ 87-89.

Nelson's daughter's treatment was partially successful; thus, in December 2021, Nelson returned early from FMLA leave and, because she was concerned about diminishing benefit time, cancelled her remaining leave request. Id. ¶¶ 85-86. In May 2022, Nelson requested intermittent FMLA leave due to her daughter's ongoing leukemia treatment. Id. ¶ 95. Defendant

LeBlanc made negative comments in response, saying again that Nelson may lose her job if she exhausted her leave benefits and needed further absences.  Id. ¶ 98.

In June 2022, the WPD proposed a forced overtime policy.  Id. ¶ 100.  Nelson addressed with LeBlanc the potential for a forced overtime shift coinciding with FMLA leave Nelson might require for her daughter's treatment.  Id.  LeBlanc told Nelson that if her daughter's treatment conflicted with a mandatory overtime shift, Nelson would need a doctor's note so that "when people bitch about [Nelson]," LeBlanc could show them the note.  Id. ¶¶ 101-03.  When Nelson later urged LeBlanc to amend the forced overtime policy because of her need to take FMLA leave to care for her daughter, LeBlanc refused and told Nelson she "should have made better choices" when she decided to take on her current responsibilities.  Id. ¶ 105.  Five days later, without warning, Nelson's firearms duties and certain other responsibilities were terminated.  Id. ¶ 106.

### B.  Nelson's Allegations of Gender, Sex, and Pregnancy Discrimination

In June 2017, Nelson applied to fill an opening for a sergeant.  Id. ¶ 16.  The promotion was given to a male colleague[2] despite Nelson's higher test score on the sergeant's exam and her higher level of education.  Id. ¶¶ 18, 22.  Then-Lieutenant McDonald informed Nelson that the male colleague's education was adjusted a level because he was only "a few credits shy" of receiving a bachelor's degree.  Id. ¶ 23.  Nelson alleges that she was denied this promotion because of her gender.  Id. ¶ 26.

During Nelson's second pregnancy in 2018, she was assigned to dispatch duty, but she was also required to train newly-hired dispatchers and write training curriculums; she alleges male officers were not given additional responsibilities while assigned to light duty.  Id. ¶¶ 34-

---

[2] The same male colleague was promoted to interim Police Chief after Defendant LeBlanc was terminated.  AC ¶ 24.

35.  Nelson found the additional workload overwhelming and stressful, but when she reported

this to then-Chief McDonald (and provided a doctor's note), McDonald told Nelson that he

wasn't sure she should work if stress was an issue.  Id. ¶¶ 36-37, 40.

A sergeant position again became available at the end of 2019, and Nelson had the

highest test score of all the applicants, earning her the promotion.  Id. ¶¶ 41, 44.  Nelson was

later approached by McDonald and told that the selectmen did not want to promote her because

she had not been supportive of McDonald's candidacy for Chief; further, McDonald told her that

she should step down as union president if she was to become sergeant, although no male officer

had been forced to resign as president as a condition of accepting a promotion.  Id. ¶¶ 45-48.

In March 2021, Chief LeBlanc promoted the same male colleague who was promoted to

sergeant in 2017 to lieutenant.  See id. ¶ 113.  LeBlanc did not call for a new list of candidates

allegedly because he knew that creating a new list would include Nelson as a candidate for the

promotion, and instead chose to promote the only available candidate from an old list.  Id.

During the spring of 2021, another female officer resigned her position, and LeBlanc told

Nelson that the resigned officer should not be "popping out more kids if she can't handle her

schedule with the ones she has."  Id. ¶ 63.  Nelson was pregnant at the time and expressed her

displeasure with LeBlanc's comment.  Id. ¶¶ 63-64.

Later that year, LeBlanc began to refer to the female officers as "his ladies."  Nelson,

other officers, and Westminster firemen began to complain about LeBlanc's "creepy" and

unprofessional behavior.  Id. ¶¶ 70-71.

In July 2022, Nelson spoke with the Town Administrator regarding LeBlanc's

discriminatory behavior.  Id. ¶ 108.  The Town then hired an outside investigator, Regina Ryan

of Discrimination and Harassment Solutions LLC, to investigate LeBlanc's conduct, during

which LeBlanc was placed on administrative leave.  Id. ¶¶ 110-11.  Ryan found that LeBlanc made discriminatory remarks about pregnancy which created an uncomfortable work environment for Nelson.  Id. ¶ 113.  Ryan discredited LeBlanc's denials of Nelson's claims, as LeBlanc acknowledged he made certain statements but claimed they were jokes.  Id.

Ryan also found that some of Nelson's claims had demonstrated a pattern of retaliation for taking FMLA leave.  Id.  Specifically, Ryan found that the change of group rotation and subsequent change in holiday schedule, the demand that Nelson move her locker, the request for a doctor's note to excuse forced overtime, the failure to inform Nelson of donated leave, and failure to call for a new list of candidates when hiring for the lieutenant's position, were retaliation for Nelson's pregnancy and FMLA leave.  Id.  Westminster subsequently terminated LeBlanc.  [Dkt. No. 32 ("Westminster MTD") at p. 2].

### C.  Procedural History

On March 27, 2023, Nelson filed a charge with the Massachusetts Commission Against Discrimination ("MCAD") based on the above allegations.  Id.

Nelson filed suit against Westminster and LeBlanc on June 14, 2023.  [Dkt. No. 1].  She brought claims of FMLA interference and retaliation, violations of the Massachusetts Civil Rights Act, intentional interference with an advantageous relationship, negligent supervision, gender and sex discrimination in violation of Massachusetts law, and sex discrimination, retaliation, and a hostile work environment claim under Title VII of the Civil Rights Act ("Title VII").  AC ¶¶ 114-59.  The parties engaged in mediation before me on December 7, 2023.  [Dkt. No. 22].  The parties were unable to reach a settlement and the case was returned to Judge Guzman.  [Dkt. No. 23].

As noted, on January 12, 2024, Nelson voluntarily dismissed Count VIII (discrimination in violation of Title VII) as to all Defendants; and Counts VII (gender and sex discrimination in violation of Chapter 151B), IX, and X (claims of retaliation and sexual harassment in violation of Title VII) as to LeBlanc.   [Dkt. No. 28].  On the same day, both Defendants moved to dismiss Nelson's claims under Federal Rule of Civil Procedure 12(b)(6).  [Dkt. Nos. 29, 31].  Nelson filed briefs in opposition to the motions on March 8.  [Dkt. Nos. 35-36].  Judge Guzman referred the motions to me for a report and recommendation on May 3, 2024.  [Dkt. No. 37].  As the parties had appeared before me for mediation, I solicited and received the parties' consent to the referral before proceeding with the below recommendation.

## II.    Standard

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007) (citing Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999)).  Materials attached to a complaint, or incorporated by reference, are a part of the pleading itself, and the court may consider them on a motion to dismiss.  Trans–Spec Truck Serv. v. Caterpillar, 524 F.3d 315, 321 (1st Cir. 2008).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556).

Although a court must accept as true all factual allegations contained in a complaint, that doctrine is not applicable to legal conclusions. Iqbal, 556 U.S. at 678-79. Rather, the court must read the plaintiff's complaint and conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the court must distinguish factual allegations, which are accepted as true, from conclusory legal statements. Id. Second, the court must determine whether the factual allegations demonstrate a "reasonable inference that the defendant is liable" for the alleged misconduct. Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011). Dismissal is only appropriate when the complaint fails to allege a plausible entitlement to relief. Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007).

## III.    Discussion

### A.  Claims Under the Family and Medical Leave Act

Nelson brings claims against both Westminster and LeBlanc for violating her rights under the FMLA. See AC at p. 15-17. I recommend that LeBlanc's motion to dismiss the interference claim be granted and Defendants' motion to dismiss the retaliation claim be denied.

The FMLA establishes substantive rights and provides protection for the exercise of those rights to eligible employees working for eligible employers. See 29 U.S.C. § 2601 et seq. It is undisputed that WPD was an eligible employer at all relevant times.[3]

To protect the exercise of FMLA-granted rights, a plaintiff can bring suit for interference with use of protected leave and/or discrimination for use of protected leave. 29 U.S.C. § 2615.

---

[3] LeBlanc disputes that Nelson was eligible for FMLA leave. However, Nelson alleges that she was an eligible employee under the FMLA in paragraph 116 of her Complaint. An employee is eligible for FMLA leave when he has (1) been employed for at least 12 months by an eligible employer, and (2) worked at least 1,250 hours with such employer during the previous 12 months. 29 U.S.C. § 2611(2)(A). Nelson alleges that she has been a full-time police officer at WPD since 2005, meaning she has worked approximately 2,000 hours/year since 2005. See AC ¶ 1. Nelson took FMLA-protected leave in 2015, 2018, and 2021 without issue. AC ¶¶ 11, 30, 65. The only instance where Nelson was technically ineligible for leave was at the end of 2021 when she had exhausted her twelve weeks of leave. Id. ¶ 75. Nelson was plainly an eligible employee under the FMLA.

Although the statute does not explicitly prohibit retaliatory actions, the Department of Labor and courts in the First Circuit have interpreted the FMLA to have impliedly prohibited retaliation. See, e.g., Chase v. United States Postal Serv., 843 F.3d 553, 557 (1st Cir. 2016) ("While the FMLA itself does not explicitly contain a prohibition on retaliation for taking leave, courts have interpreted the Act to have such an implied prohibition."). Nelson alleges that Defendants interfered with her use of protected leave and retaliated against her for taking protected leave.

### 1. Statute of Limitations

The statute of limitations for FMLA claims is two years from the "date of the last event constituting the alleged violation;" three years if the violation is willful. Hillstrom v. Best Western TLC Hotel, 265 F. Supp. 2d 117, 127 n.17 (D. Mass. 2003). To demonstrate a willful violation of the FMLA and enlarge the statute of limitations, the plaintiff must demonstrate that the defendant employer (1) had actual knowledge of and recklessly disregarded the requirements of the FMLA, and (2) intentionally disobeyed or ignored the law. Favreau v. Liberty Mutual, Inc., 451 F. Supp. 3d 150, 160 (D. Mass. 2020). The actual knowledge requirement is fulfilled if the employer had previously granted FMLA leave. Id. at 160-61. The touchstone of the second requirement is the employer's discriminatory animus, demonstrated by derogatory comments or hostility towards the plaintiff's need to take leave. Id. at 161.

Nelson has established that Defendants willfully violated the FMLA. The actual knowledge requirement is fulfilled here as Nelson had been granted FMLA leave prior to alleged retaliatory conduct. See, e.g., AC ¶¶ 11, 28-32. Moreover, Nelson has established that LeBlanc, Nelson's supervisor, had discriminatory animus, as LeBlanc made derogatory comments about pregnant female officers to Nelson after learning that Nelson herself was pregnant. See, e.g., id. ¶¶ 53, 62-63. Additionally, LeBlanc was hostile towards Nelson when she requested leave or

suggested that she would need leave due to her daughter's illness. <u>See</u> <u>id.</u> ¶¶ 98, 103, 105. Nelson has therefore pled facts sufficient to state a plausible willful violation of the FMLA, enlarging the statute of limitations from two years to three.

  Nelson filed suit on June 14, 2023. Dkt. No. 1. As Nelson established a plausible claim for a willful violation of the FMLA, conduct occurring on or after June 14, 2020, is actionable and not time barred.[4]  This period captures LeBlanc's tenure as Chief, which commenced in the Fall of 2020. AC ¶ 49.

  Conduct occurring before June 14, 2020, is time barred. Unlike Title VII claims, <u>see</u> <u>infra</u>, courts have generally been unwilling to apply an exception to the statute of limitations for "continuous violations," or patterns of discrimination that allow a plaintiff to use untimely discriminatory acts as part of the factual basis for an FMLA claim. <u>See</u> <u>Favreau</u>, 451 F. Supp. 3d at 164-65; <u>Barrett v. Ill. Dep't of Corrections</u>, 803 F.3d 893, 898-99 (7th Cir. 2015). If such an exception were to apply, the untimely allegations would have to relate to the same "underlying leave request" as the timely allegations. <u>See</u> <u>id.</u> 164-65, 165 n.5. Under this theory, the untimely allegations would be actionable as they are anchored by the timely allegations. <u>See</u> <u>id.</u> However, this theory would not apply here. Nelson made separate leave requests arising from three pregnancies (in 2015, 2018, and 2021) and care for her daughter's cancer in and after November 2021. Each of these uses of leave is the product of a discrete request. Retaliatory conduct that occurred after Nelson's first or second pregnancy pertains to those leave requests only and cannot be anchored by retaliatory conduct that occurred after her third pregnancy or after intermittent leave to care for her daughter. Thus, the continuing violation exception does not apply, and I recommend the Court consider conduct that occurred after June 14, 2020, only.

---

[4] If Nelson is found not to have established a plausible willful violation of the FMLA, only conduct occurring on or after June 14, 2021, would be actionable.

*2.  Interference with Rights Protected by the Family and Medical Leave Act*

With a three-year limitations period in mind, I recommend that Count II, alleging

interference with FMLA-protected rights against LeBlanc, be dismissed.  Nelson alleges that

LeBlanc interfered with her use of protected leave.  <u>See</u> AC at p. 16.  LeBlanc argues that Nelson

was never prohibited from taking protected leave.

To prove interference with FMLA-protected rights, the plaintiff must show that (1) she

was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she

was entitled to take leave under the FMLA; (4) she gave her employer notice of her intention to

take leave; and (5) she was denied FMLA benefits by her employer.  <u>Eissa v. Ledvance LLC</u>,

626 F. Supp. 3d 209, 217 (D. Mass. 2022) (quoting <u>Carrero-Ojeda v. Autoridad de Energia</u>

<u>Electrica</u>, 755 F.3d 711, 728 n.8 (1st Cir. 2014)).  Unlike retaliation claims, the plaintiff does not

have to prove that the employer intended to interfere with the plaintiff's protected rights.

<u>Favreau</u>, 451 F. Supp. 3d at 170.

Interference is a standalone violation separate from retaliation claims.  An interference

claim is better suited to situations where an employer blocks an employee's request for leave to

which he is entitled, whereas a retaliation claim is better suited to situations where an employer

takes adverse employment actions against the employee for having taken leave or given notice of

an intention to take leave.  <u>See</u> <u>Chacon v. Brigham & Women's Hosp.</u>, 99 F. Supp. 3d 207, 214-

15 (D. Mass. 2015).  When faced with a claim pleaded as an interference claim but which is, in

reality, a retaliation claim, courts will analyze it under the retaliation framework.  <u>See, e.g.</u>, <u>id.</u>;

<u>Kleya v. Karl Storz Endovision, Inc.</u>, 385 F. Supp. 3d 99, 104 n.2 (D. Mass. 2019); <u>see also</u>

<u>Colburn v. Parker Hannifin/Nichols Portland Div.</u>, 429 F.3d 325, 331-32 (1st Cir. 2005)

(explaining the difference between interference and retaliation claims).

Focusing on conduct within the three-year limitations period, Nelson's interference claim is better suited to the retaliation framework set forth below.  Neither LeBlanc nor Westminster ever denied Nelson leave when she was entitled to take it.  Nelson requested leave in December 2020 for her pregnancy, which she took without interference in May 2021.  AC ¶¶ 52, 65, 67.  In November 2021, Nelson's FMLA request for her daughter's cancer treatment was denied, but only because she had already exhausted the twelve weeks of FMLA leave to which she was entitled.  Id. ¶¶ 74-75.  Nelson does not allege she was denied intermittent leave in May 2022 to care for her daughter.  Id. ¶ 95.  Nelson instead alleges that she suffered adverse employment actions because she requested and took FMLA-protected leave.  These allegations are the basis of a retaliation, not interference, claim.

Nelson appears to concede that her interference claim is really a claim for retaliation, as she does not offer an argument in support of her interference claim in her opposition brief to LeBlanc's motion.  See generally Dkt. No. 36.  When a plaintiff does not address an argument to dismiss a claim, courts may consider opposition to the dismissal of that claim waived.  See, e.g., Perkins v. City of Attleboro, 969 F. Supp. 2d 158, 177 (D. Mass. 2013); Leader v. Harvard Univ. Bd. Overseers, No. 16-cv-10254, 2017 WL 1064160, at *6 (D. Mass. Mar. 17, 2017).  Therefore, I recommend that LeBlanc's motion to dismiss be GRANTED as to Count II alleging interference with FMLA-protected rights.

   3.  *Discrimination/Retaliation in Violation of the Family and Medical Leave Act*

I recommend that Defendants' motions to dismiss Counts I and III, alleging discrimination and retaliation against Nelson's use of FMLA-protected rights, be denied.

To state a prima facie case for FMLA retaliation, a plaintiff is required to show that (1) he availed himself of a protected FMLA right, (2) he was adversely affected by an employment

decision, and (3) there was a causal connection between the protected conduct and the adverse action.[5]  Chacon, 99 F. Supp. 3d at 213-14.  It is undisputed that Nelson availed herself of protected rights under the FMLA by requesting leave for her pregnancy and to care for her sick daughter.  Nelson has therefore satisfied the first element.

As to the second required showing, an adverse employment action is one that affects the plaintiff's employment or "alters the conditions of the workplace."  Kleya, 385 F. Supp. 3d at 106 (quoting Moralles-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010)).  Such adverse actions typically involve "discrete changes in the terms of employment" such as terminations, failures to promote, reassignments with significantly different responsibilities, or decisions causing significant changes to or reductions in benefits.  Id.  Essentially, the action must be adverse enough that it would dissuade a reasonable employee from engaging in protected activity.  Id. (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)).  Here, again focusing on conduct alleged to have occurred in the three years prior to filing suit in June 2023, Nelson alleges that she was denied a promotion to lieutenant in 2021 because she requested maternity leave; in December 2020, denied a less physically burdensome 3 to 11 dispatch shift during her pregnancy; in December 2021, moved off group rotation, requiring her to work during a holiday she previously had off; and in Spring 2021, ordered to move her locker to a male-only space after returning from maternity leave.  AC ¶¶ 52, 58, 67-69.  Certainly, the denial of a promotion is a discrete change in Nelson's employment.  Additionally, denying her a less physically burdensome shift made Nelson's job more difficult while she was pregnant.

---

[5] Although not explicitly listed as an element of a prima facie case for retaliation, a claim for FMLA retaliation "stands or falls with the employer's motive," meaning Nelson will be required to prove LeBlanc's conduct was motivated by retaliatory animus.  Favreau, 451 F. Supp. 3d at 171.  Retaliatory animus or motive in employment discrimination cases is a question of fact, and often not ripe for decision at the motion to dismiss stage.  See, e.g., id. at 173.  At this stage, it is sufficient that Nelson alleges LeBlanc's derogatory comments concerning her need to take leave (pregnancy and motherhood) coupled with temporal proximity between her protected conduct and the adverse employment actions.

Finally, asking Nelson to move her locker to a male-only space and taking control of her holiday schedule could significantly inconvenience her—the former every time Nelson appeared for work. Drawing all reasonable inferences in Nelson's favor, each of the foregoing actions could dissuade reasonable employees from requesting leave. Thus, Nelson plausibly alleged adverse employment actions to satisfy the second requirement of a <u>prima facie</u> case for retaliation.

Finally, to state a <u>prima facie</u> case for retaliation, a plaintiff must also show a causal connection between the exercise of leave and the adverse action. In general, the burden of showing causation is "quite easy to meet."[6] <u>Crevier v. Town of Spencer</u>, 600 F. Supp. 2d 242, 261 (D. Mass. 2008) (quoting <u>Hodgens v. Gen. Dynamics Corp.</u>, 144 F.3d 151, 165-66 (1st Cir. 1998)). "Very close temporal proximity between protected activity and an adverse action" can establish a causal connection, <u>Sánchez-Rodríguez v. AT&T Mobility P.R., Inc.</u>, 673 F.3d 1, 15 (1st Cir. 2012) (quoting <u>Calero-Cerezo v. U.S. Dep't Justice</u>, 355 F.3d 6, 25 (1st Cir. 2004)), unless the "larger picture undercuts any claim of causation." <u>Carrero-Ojeda</u>, 755 F.3d at 720. Other indicia of causation includes "negative comments, complaints, or expressions of reluctance by her superiors or co-workers about [a plaintiff's] FMLA leave-taking." <u>Id.</u>

Nelson has alleged both temporal proximity and other indicia of causation. Nelson alleges that, in 2021, shortly after she informed LeBlanc that she would need maternity leave, LeBlanc elected to use an old candidacy list for the open lieutenant's position that effectively excluded Nelson from consideration. AC at p. 14. Additionally, shortly after Nelson returned from FMLA leave in 2021, LeBlanc ordered her to move her locker to a male-only space. <u>Id.</u> ¶¶

---

[6] Courts in the First Circuit are split over the proper test for determining causality. Some courts mandate that retaliation be the "but-for" cause of the adverse action, while others, and the Department of Labor, use the more lenient "negative factor" test, which prohibits employers from regarding the use of FMLA-protected rights as a negative factor in employment actions. <u>See</u> <u>Logue v. Rand Corp.</u>, 668 F. Supp. 3d 53, 63-64 (D. Mass. 2023) (describing the two tests and collecting cases). It is not necessary for the Court to wade into this debate, as Nelson's claim survives under either test.

67-69.  Finally, Nelson alleges that in and after Fall 2020, LeBlanc made negative comments about pregnancy and suggested that Nelson could lose her job if she was absent after exhausting her allotted leave time.  Id. ¶¶ 97-98.  The temporal proximity of Nelson's protected activity and LeBlanc's negative comments about pregnancy satisfies the low threshold for establishing causation.  Thus, Nelson has plausibly alleged a prima facie case for FMLA retaliation.

Defendants claim that Nelson fails to state a prima facie case for retaliation because she did not suffer an actionable adverse employment action.  Westminster MTD at p. 5; [Dkt. No. 30, ("LeBlanc MTD") at p. 8].[7]  Westminster argues that being removed from firearms duty and being asked to provide additional documentation before taking leave are not adverse employment actions.  Westminster MTD at p. 5.  The Court disagrees; the loss of firearm duties could affect Nelson's ability to qualify in the future for promotion or other specialty assignments, and requiring her to get a doctor's note in addition to FMLA paperwork potentially burdened her access to an earned benefit.  In any case, Defendants implicitly concede that being denied eligibility for the lieutenant's position is an adverse action but argue that it is not actionable because Nelson did not take leave until two months after the promotion decision.  Id.; LeBlanc

---

[7] LeBlanc also offers two other, unpersuasive arguments.  First, he argues that he cannot be held individually liable under the FMLA.  LeBlanc MTD at p. 10-11.  A fair reading of the Complaint indicates that LeBlanc is only sued in his official capacity for the FMLA claims.  See AC at p. 1.  Nor does Nelson oppose LeBlanc's argument that he cannot be held individually liable under the FMLA.  See generally Dkt. No. 36.  This is consistent with the Court's understanding of the FMLA, as eligible employers are defined as any "public agency," without specification about individual liability of supervisors.  But see Gregg v. Northeastern Univ., 599 F. Supp. 3d 9, 14 (D. Mass. 2022) ("[T]he 'national trend' is toward permitting individual liability under the FMLA.").  As LeBlanc is not sued in his individual capacity, he is not individually liable under the FMLA.

Secondly, LeBlanc argues that Nelson has not suffered a harm for which she could recover damages under the FMLA.  LeBlanc MTD at p. 9-10.  LeBlanc correctly points out that "a plaintiff may not recover damages for emotional distress under the FMLA."  Pagan-Colon v. Walgreens of San Patricio, Inc., 697 F.3d 1, 16 (1st Cir. 2012).  However, Nelson alleges that she was stripped of responsibilities and promotion opportunities in retaliation for FMLA-protected activities.  If proven, she could recover compensatory damages for differences in compensation had she retained other duties or been promoted to a (presumably) higher-paying rank.  See 29 U.S.C. § 2617(a).  As the FMLA provides a remedy for Nelson's claims, LeBlanc's argument to the contrary is meritless.

MTD at p. 8. At the time of the promotion decision, Nelson had only informed Defendants of her need for FMLA pregnancy leave. AC ¶¶ 52, 113, 126-27.

Defendants' argument fails. Among other things, protected activity under the FMLA includes requesting leave or notifying an employer of a need to take leave. See 29 C.F.R. § 825.220 (entitled "Protection for employees who request leave or otherwise assert FMLA rights" (emphasis added)); Surprise v. Innovation Grp. Inc./First Notice Sys., Inc., 925 F. Supp. 2d 134, 146 n.6 (D. Mass. 2013). ("[A] plaintiff, as here, who makes known to his employer an intent to request FMLA leave has the right not to suffer adverse action as a result of that disclosure . . . ."). Here, Nelson disclosed to LeBlanc in December 2020 that she was pregnant and would need to take leave in May 2021. AC ¶ 51. In March 2021, LeBlanc began the lieutenant promotion process and managed eligibility to exclude Nelson. Id. ¶ 113. Contemporaneously, LeBlanc made negative comments about pregnant officers to Nelson. Id. ¶ 63. Contrary to Defendants' arguments, the temporal proximity between Nelson's leave request and the promotion decision coupled with LeBlanc's negative comments is sufficient to establish a claim for retaliation.

Nelson has plausibly alleged a claim for FMLA retaliation and Defendants' motions to dismiss these claims, Counts I and III, should be DENIED.

### B. Violations of the Massachusetts Civil Rights Act

I recommend that Count IV, alleging intimidation and coercion in violation of the Massachusetts Civil Rights Act ("MCRA"), be dismissed.

MCRA permits an individual who has been deprived of a right under the U.S. or Massachusetts Constitution and/or federal or state law to bring suit for injunctive relief, equitable remedies, and/or compensatory money damages. Mass. Gen. Laws ch. 12 § 11*I*. "The MCRA creates no substantive rights; rather, it provides a mechanism for obtaining relief from the

interference, or attempted interference, with rights conferred by Federal or Massachusetts law." Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 594 (2001).

Nelson alleges that LeBlanc interfered with her rights under the FMLA through coercion and threats, in violation of MCRA.  AC ¶¶ 131-33.  However, MCRA does not protect rights provided by the FMLA because the FMLA's enforcement provision is the exclusive remedy for violations of the statute.  See Desrochers v. Hilton Hotels Corp., 28 F. Supp. 2d 693, 695 (D. Mass. 1998); Regan v. Commonwealth of Mass. ex. rel. Dep't of Correction, No. 08-cv-11876, 2010 WL 2510093, at *1 n.1 (D. Mass. June 16, 2010).  Because the enforcement provision provides the exclusive remedies for interference with FMLA-protected rights, Nelson's FMLA-based claim brought via MCRA is preempted and should be dismissed.

### C.  Gender and Sex Discrimination Under Chapter 151B

I recommend that Westminster's motion to dismiss Count VII, alleging gender and sex discrimination in violation of Mass. Gen. Laws ch. 151B, be denied.  Massachusetts law prohibits an employer from discriminating against an individual because of the individual's sex, gender, pregnancy, and/or conditions related to pregnancy.  Mass. Gen. Laws ch. 151B, § 4.

Discrimination claims under Chapter 151B must be filed with MCAD within 300 days of the alleged act of discrimination.  Mass Gen. Laws ch. 151B, § 5.  The statute of limitations can be extended if the plaintiff alleges facts that show a continuing pattern of discrimination and the last discriminatory act occurred within the limitations period.  This is often referred to as the continuing violation exception.  See 804 Mass. Code Regs. § 1.04(4)(b).  The continuing violation exception applies when (1) the alleged wrong was of a continuing nature, (2) at least one substantially related act occurred during the limitations period, and (3) the defendant's actions outside of the limitations period did not trigger the plaintiff's awareness and duty to

assert his rights, i.e., that he could not have formed a reasonable belief that he was being discriminated against at the time. <u>Eissa</u>, 626 F. Supp. 3d at 215 (citing <u>Welch v. People's United Bank</u>, No. 20-cv-11390, 2021 WL 1391467, at *19-20 (D. Mass. Apr. 13, 2021)).

Nelson filed a complaint with MCAD on March 27, 2023, meaning the statute of limitations began to run 300 days prior, on May 31, 2022. Westminster MTD at p. 2. Any action taken prior to May 31, 2022, is barred by the statute of limitations unless the continuing violation exception applies.

Nelson can satisfy the first and second prongs of the continuing violation exception because the alleged conduct was of a continuing nature and substantially relates to timely allegations. For instance, the Complaint timely alleges that LeBlanc engaged in ongoing retaliation against Nelson for her use of maternity leave, including allegations that as part of such retaliation, LeBlanc removed Nelson from firearms duty, ordered Nelson to provide extra documentation from a doctor if Nelson were to miss a forced overtime shift while caring for her daughter, and told Nelson she "should have made better choices" when having children and becoming a working mother. AC at p. 5, 11.

However, Nelson fails to meet the third prong of the continuing violation exception because LeBlanc's conduct outside the limitations period should have triggered her awareness and duty to assert her rights. The primary inquiry is whether a plaintiff knew or reasonably should have known that her work situation was pervasively hostile and unlikely to improve, and thus, a reasonable person in her position would have filed a complaint with the MCAD before the statutory period expired. <u>Cuddyer v. Stop & Shop Supermarket Co.</u>, 750 N.E.2d 928, 942 (Mass. 2001). Nelson alleges she was first discriminated against in 2017, when a male colleague with allegedly inferior qualifications, instead of Nelson, was promoted to sergeant. AC at p. 5.

Nelson alleges that in 2018 she was not considered for the SRO position because she was pregnant.  Id.  Indeed, Nelson alleges that she was told that LeBlanc stated this was the reason for the selection of a junior officer for the SRO position.  In Fall 2021, LeBlanc ordered Nelson to relocate her locker from the women's locker room to an office otherwise used by male officers only.  Id. at p. 8.  These incidents, among others, should have put Nelson on notice of a pervasively hostile work environment which was likely to persist and negatively impact advancement, specialty appointments, and daily workplace interactions.  There are no allegations that her work situation was improving; to the contrary, in Fall 2020 LeBlanc was appointed Chief, and Nelson alleges that WPD officers and Westminster firefighters later began complaining of LeBlanc's unprofessional and "creepy" behaviors.  Id. at p. 5, 8.  Therefore, the continuing violation exception is inapplicable and Nelson's allegations of discriminatory statements or conduct occurring before May 31, 2022, cannot be considered as part of the Chapter 151B claim.

Accordingly, the allegations which can be considered because they occurred on and after May 31, 2022, are LeBlanc telling Nelson she "should have made better choices" when balancing her job and motherhood, summarily and without notice removing Nelson from firearms duty, and requiring Nelson provide documentation (in the form of a doctor's note) beyond a leave request if care for her daughter caused Nelson to miss a forced overtime shift.  Id. at p. 11.  Even without the continuing violation exception, these allegations are sufficient.

To prevail on a claim for gender discrimination under Chapter 151B, Nelson must prove four elements: (1) membership in a protected class, (2) harm, (3) discriminatory animus, and (4) causation.  Sullivan v. Liberty Mutual Ins. Co., 825 N.E.2d 522, 530 (Mass. 2005); see also Soni v. Wespiser, 239 F. Supp. 3d 373, 385 (D. Mass. 2017) (using these factors to assess a plaintiff's

allegations of sex discrimination under Chapter 151B).  Nelson's Complaint, limited to the post-May 31, 2022, allegations, satisfies these elements.

As to the first element, Nelson is a member of a protected class because she is a female and took three separate leaves for pregnancies and then intermittent leave to facilitate her daughter's cancer treatment.  As to the second, the Complaint alleges sufficient harm: LeBlanc created a hostile environment for Nelson through his actions and comments, terminated her firearms duties which impacted her job, ordered her to obtain a doctor's note to take FMLA leave, and incited fear that her job was in jeopardy.  Dkt. No. 36 at p. 8-9; AC at p. 18.

As to the third element, alleging discriminatory animus: at the pleading stage, the burden of showing discriminatory animus is "modest."  Soni, 239 F. Supp. 3d at 385.  Nelson "need only plead sufficient facts to make it plausible" that LeBlanc acted with discriminatory animus.  Id. Here, Nelson alleges that LeBlanc removed her from firearms duty, ordered her to obtain doctor's notes for any FMLA-protected leave, and, shortly after Nelson requested that the forced overtime policy be changed to accommodate her need to care for her sick daughter, suggested that Nelson's poor choices led to the tension between her familial and professional responsibilities.  AC ¶¶ 105-06.  These allegations meet the modest requirements of pleading discriminatory animus as they make it plausible that LeBlanc was hostile to Nelson's use of leave and acted on that hostility to Nelson's detriment.  Nelson has thus satisfied the third element of a Chapter 151B claim.

Finally, Nelson has plausibly alleged an inference of causation.  If an adverse action is "taken against a satisfactorily performing employee in the immediate aftermath of the employer's becoming aware of the employee's protected activity, an inference of causation is permissible."  Mole v. Univ. of Mass., 814 N.E.2d 329, 339 (Mass. 2004).  Nelson has no

disciplinary history and, in 2019, had been promoted to sergeant.  A fair inference is that she had been satisfactorily discharging her duties.  On June 23, 2022, Nelson spoke to LeBlanc about the forced overtime policy, and LeBlanc told Nelson that "she should have made better choices" and the policy would not be changed.  AC at p. 11.  Within a week, LeBlanc terminated Nelson's firearms duties without notice.  Id.  The temporal proximity between Nelson's overtime policy complaint and LeBlanc's adverse action supports an inference of causation.  Further, in the context of the other allegations, the inference of causation is strengthened.  Accordingly, I recommend that Westminster's motion to dismiss Count VII be DENIED.

### D.  Title VII Claims

Westminster moves to dismiss Nelson's claims under Title VII, 42 U.S.C. § 2000e et seq., because they are based partly on untimely allegations and, even based on the timely allegations, that Nelson fails to state a claim upon which relief can be granted.  I recommend that Westminster's motion to dismiss the Title VII claims be DENIED.

#### 1.  Timeliness of Nelson's Title VII Claims

Title VII has a 180-day statute of limitations, beginning once the unlawful employment action occurred; the limitations period extends to 300 days if the unlawful employment practice is prohibited by state law.  42 U.S.C. § 2000e-5(e)(1).  "[A]ny person seeking relief under Title VII must file a charge . . . with a state or local agency 'within three hundred days after the alleged unlawful employment practice occurred.'"  Rodriguez v. Smithkline Beecham, 224 F.3d 1, 7 (1st Cir. 2000) (quoting 42 U.S.C. § 2000e-5(e)(1)).  As Nelson filed a charge with MCAD on March 27, 2023, alleging gender discrimination and retaliation, the limitations period for her Title VII claims began to run on May 31, 2022.

However, Title VII claims benefit from a continuing violation exception. O'Rourke v. City of Providence, 235 F.3d 713, 730 (1st. Cir. 2001). To establish a continuing violation, a plaintiff must satisfy three requirements: (1) the claim arises from "a series of related events" that must be viewed in their totality to assess "their discriminatory nature and impact;" (2) at least one incident occurred within the limitations period; and (3) a reasonable person would not have been on notice that he had a claim based solely on the conduct outside the limitations period. See Harrington v. Lesley Univ., 554 F. Supp. 3d 211, 227 & n.7 (D. Mass. 2021). Nelson easily satisfies the first two requirements, as discussed supra, in Part III.C.

Only some of Nelson's allegations meet the criteria of the continuing violation exception's third requirement. The federal test differs from the standard under Massachusetts law with respect to this element; under Title VII, a plaintiff's statute of limitations begins to run when the plaintiff is on notice that she has a substantial, actionable claim. See id. at 227 n.7. The continuing violation exception is not applicable to discrete actions such as job site relocations, failures to promote or consider a plaintiff for a specialty position, or the failure to assign work responsibilities. See Ayala v. Shinseki, 780 F.3d 52, 57 (1st Cir. 2015). Instead, the exception is meant to "protect plaintiffs from losing the ability to file suit for Title VII claims that might, by their nature, take time to materialize." Id. at 58 (citations omitted). Applying these parameters, certain allegations in the Complaint are time-barred—including the failure in 2017 to promote Nelson to sergeant, failing in 2018 to consider Nelson for the SRO position, and in 2021, excluding Nelson from consideration for the lieutenant's position.[8]

---

[8] The continuing violation exception is particularly difficult to apply when, as here, the plaintiff alleges various retaliatory events which, only when viewed in their totality, construct a hostile work environment. When considering these different allegations, the third requirement of the exception appears to be in tension with the first. The first requirement instructs the court to identify a "series of related events" that must be viewed in their totality. Harrington, 554 F. Supp. 3d at 227. However, the Supreme Court has clarified that discrete acts, such as termination or failure to promote, are "separate" actions for purposes of the statute of limitations. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114-15 (2002). By their definition, discrete acts cannot comprise a

However, the continuing violation exception applies insofar as Nelson alleges a series of actions starting in late 2020, when LeBlanc became Chief, which took time to materialize into a Title VII claim.  Outside the limitations period, LeBlanc initiated a pattern of discriminatory actions, including suggesting that Nelson's job could be jeopardized because of absences to care for her daughter if Nelson exhausted her leave allowance; making derogatory comments to Nelson about pregnancy; and changing Nelson's group rotation so her holiday schedule was

"series of related events," suggesting they are meant to be excluded from consideration under the first requirement.  A fair reading of the continuing violation exception would require the court to first separate discrete acts, which are immediately actionable, from acts which must be viewed in their totality to be actionable to determine the universe of "related events."  The third requirement instructs the court to determine whether a reasonable person would have refrained from filing a claim within the proper limitations period.  Harrington, 554 F. Supp. 3d at 227 & n.7.  What remains unclear is whether, when considering the third requirement, the court must look to the entire complaint, including discrete acts, or whether the court looks only to the "series of related events" after the discrete acts have been culled.  The distinction has implications for Nelson's claim.  If the former is correct, then a reasonable person would have brought a claim after Nelson was first denied the promotion to sergeant in 2017, or after she was denied the SRO assignment in 2018, or after she was denied the promotion to lieutenant in 2021.  Nelson's failure to bring her claim after these discrete acts would doom all allegations occurring more than 300 days before she filed a charge with MCAD, as she would have been immediately on notice of an actionable claim well before she filed a charge with MCAD.  However, if the latter is correct and the reasonable person analysis applies only to the "series of related events" after the discrete acts have been culled, Nelson has sufficiently alleged a series of discriminatory actions that must be viewed in their totality to be actionable.  Consider LeBlanc's actions after he became Chief in late 2020 (without accounting for the lieutenant's promotional process in mid-2021): he placed Nelson on a more demanding dispatch shift after learning she was pregnant; made several derogatory comments about pregnancy even knowing that Nelson was pregnant and a mother; ordered Nelson to move her locker, necessitating daily inconveniences that other officers do not have to experience; and then after Nelson's daughter was diagnosed with leukemia, he insinuated that further absences from work would jeopardize her job, forced changes to her schedule that resulted in Nelson working on Christmas (a holiday she previously had off), did not notify Nelson that her colleagues had donated their leave time to ameliorate her situation, and forced her to jump through an additional hoop to care for her daughter by getting a doctor's note to take time off when no such requirement existed before.  After Nelson complained about these actions, he removed some of her responsibilities, including firearms duty.  Any one of these actions standing alone does not constitute an actionable claim, but when viewed together, they plausibly allege that LeBlanc retaliated against Nelson for her pregnancy and maternal obligations, and created a hostile work environment because he held discriminatory animus towards pregnant officers and working mothers.  This pattern seems to be precisely the type of claim that the continuing violation exception is meant to preserve.  See Johnson v. Univ. of P.R., 714 F.3d 48, 53 (1st Cir. 2013) ("Discrete acts and hostile work environment claims are 'different in kind,' because hostile work environment claims by their nature involve repeated conduct and a single act of harassment may not be actionable on its own." (internal citations omitted)).  Yet if the court is meant to consider discrete acts as part of the "series of related events" when analyzing the continuing violation exception, the bulk of these actions would be untimely and unactionable.

The parties do not address this argument; they only obliquely refer to the continuing violation exception.  See Westminster MTD at p. 4 (referring on "ongoing" FMLA violations); Dkt. No. 35 at p. 15-17.  Nor did the Court find caselaw to clarify this tension.  In the Court's view, the universe of allegations considered when analyzing the first and third requirements of the exception is the same—the discrete acts are removed from consideration, and the remaining "related events" are viewed in their totality in determining if the first and third requirements are met.

disrupted.  Within the limitations period, Nelson also alleges continuing conduct: in June 2022, LeBlanc ordered Nelson to provide a doctor's note should cancer treatment for her daughter necessitate Nelson missing forced overtime.  AC ¶¶ 101-03.  LeBlanc created this requirement "so that when people bitch about [Nelson], he has a doctor's note to show them."  Id.  Nelson also alleged that in June 2022, after she had complained to LeBlanc about the unworkability of the forced overtime policy, LeBlanc terminated her duties relating to firearms and other matters.  Id. ¶ 106.  Accordingly, the actions beginning in late 2020 when LeBlanc became Chief, as detailed in and after Paragraph 49 of Nelson's Amended Complaint (excluding the allegations regarding the process to fill the lieutenant's position), are related to the timely allegations of conduct in June 2022 and are not time-barred as they did not place Nelson on notice of her Title VII claims.

### 2.  Retaliation Under Title VII

Working then within the time frame from Fall 2020 when LeBlanc became Chief, Westminster's motion to dismiss Count IX, alleging Title VII retaliation, should be denied as Nelson suffered adverse employment actions due to Defendant's retaliatory animus.  Title VII's retaliation provision prohibits an employer from retaliating against an employee for attempting to assert rights under Title VII.  Lockridge v. Univ. of Me. Sys., 597 F.3d 464, 470 (1st Cir. 2010) (citing DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008)).  To state a prima facie case of retaliation, Nelson must allege (1) she engaged in protected conduct under Title VII; (2) she suffered an adverse employment action; and (3) the adverse action was causally connected to the protected activity.  Fantini v. Salem State Coll., 557 F.3d 22, 31 (1st Cir. 2009) (citing Mariani-Colon v. Dep't of Homeland Sec., 511 F.3d 216, 224 (1st Cir. 2007)).  Westminster does not

appear to challenge the notion that Nelson engaged in protected conduct.  As such, only the second two elements are in dispute.

As noted, adverse employment actions include demotions, refusals to promote, and tolerance of harassment by other employees.  Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 23 (1st Cir. 2002).  The action must cause a materially adverse employment outcome.  Id. Nelson alleges she was removed from firearms duty, ordered to move her locker into an all-male space, had her scheduled modified in disregard for her seniority, ordered to provide doctor's notes for her FMLA leave, placed on a more physically demanding dispatch shift while she was pregnant, and denied information about donated leave time from her colleagues.  I find these claims are sufficient to establish adverse employment action.

Westminster's counterargument that these events do not constitute adverse employment actions is not persuasive.  Whether a particular change in job responsibilities is adverse is judged from the standard of a reasonable person and in consideration of all surrounding circumstances. Burlington N., 548 U.S. at 71.  Here, as an example, requiring Nelson to go beyond the protocol for taking leave and additionally obtaining a doctor's note to justify leave to facilitate cancer treatment for her daughter burdened Nelson with the task of getting the attention and time of a doctor to take leave Nelson was legally entitled to take.  Moreover, that the doctor's note should be required so LeBlanc had a document when people "bitched" about Nelson damaged her standing in the WPD and undermined her authority as a sergeant.  Lastly, that this occurred in the context of LeBlanc's ongoing hostility toward Nelson and her private decisions about her family indicates retaliatory conduct.  The same can be said of terminating Nelson's firearms duties.  Indeed, the Equal Employment Opportunity Commission has found retaliatory work assignments to be a classic example of employer retaliation.  Id.

26

Westminster also argues that Nelson's claims relate only to language she found offensive and changes which affected all employees. They also allege Nelson was never forced to provide doctor's notes to support leave to care for her daughter, denied time off, or forced to move her locker. Further, they claim changes in WPD hiring practices affected all staff, they never withheld information of donated time, and the change in job responsibility was made to lessen Nelson's workload. See Westminster MTD at p. 12-13. These arguments simply ignore the allegations in the Amended Complaint. Being removed from firearms duties and other responsibilities are not mere language; it had immediate consequences and potentially impacted Nelson's qualifications for future promotions and increased compensation. Whether or not Nelson provided doctors' notes or moved her locker, the orders are probative of the hostile and discriminatory work environment for which Defendant must answer because tolerated noncompliance shows there was no legitimate reason for the orders; rather, it is a fair inference that LeBlanc gave the orders to retaliate against Nelson. As to the allegation that notice of gifted of donated time were never withheld, the Court is bound to accept the contrary allegation in the Complaint as true. Viewed in their totality, conduct for which Defendant is, at this stage, accountable had a materially adverse effect on Nelson's employment sufficient to survive a motion to dismiss. Westminster's arguments to the contrary are unpersuasive.

Finally, Nelson plausibly alleges causality. Temporal proximity alone can meet the relatively light burden of establishing a causal connection for retaliation. Collazo v. Bristol Myers Squibb Mfg., Inc., 617 F.3d 39, 49-50 (1st Cir. 2010). As evidence of a causal connection, Nelson points to LeBlanc's comments in Spring 2021 about another employee's pregnancy while LeBlanc knew Nelson herself was pregnant. Additionally, Nelson alleges that shortly after requesting maternity leave in 2020, Nelson was placed on an undesirable and more

burdensome 11 p.m. to 7 a.m. shift and was not allowed to switch to the 3 to 11 p.m. shift even when it was available.  Finally, after returning from maternity leave in September 2021, Nelson was ordered to move her belongings into an office occupied by only male officers, meaning Nelson would have to move her uniform and toiletry items between back and forth when no other officer was required to do so.  These adverse actions and comments occurred shortly after Nelson used leave or had advised LeBlanc that she was pregnant and would use maternity leave. As the burden of establishing a causal connection is relatively light, Nelson sufficiently pleads temporal proximity between the alleged harm and her maternity leave.

Nelson plausibly alleges adverse employment actions causally connected to her pregnancies and use of maternity leave.  Accordingly, I recommend that Westminster's motion to dismiss Count IX for Title VII retaliation be DENIED.

### 3. *Sexual Harassment/Creation of a Hostile Work Environment Under Title VII*

Westminster's motion to dismiss Count X, for sexual harassment and hostile work environment under Title VII, should be denied as Nelson plausibly alleges a claim for sexual harassment and creation of a hostile work environment.

Title VII prohibits discrimination "because of" an employee's sex, which includes discrimination "because of" a woman's pregnancy.  See 42 U.S.C. § 2000-e(k).  Under the hostile work environment theory, Title VII is violated when the workplace is permeated by "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Gorski v. N.H. Dep't of Corrections, 290 F.3d 466, 471 (1st Cir. 2002).  Essential to a hostile work environment claim is proof (or at this stage, allegations) that the workplace was so hostile or abusive that "the terms or conditions of the plaintiff's employment" were altered.  Id.

In the continuing violation period dating back to Fall 2020 when LeBlanc became Chief, Nelson alleges that LeBlanc's discriminatory conduct was severe and pervasive such that it interfered with her health and work performance.  AC ¶ 157.  However, Nelson's legal conclusions are not to be credited; only her factual allegations must be taken as true.  See García-Catalán, 734 F.3d at 103.  To support her hostile work environment claim, Nelson points to the same conduct that supports her retaliation claim.  In December 2020, while Nelson was pregnant, LeBlanc placed her on a more strenuous overnight dispatch shift even when a more favorable shift, which she sought, became available; in Spring 2021 and June 2022, LeBlanc made negative comments about pregnancy and Nelson's responsibilities as a working mother; in September 2021, after Nelson returned from maternity leave, LeBlanc ordered Nelson to move her locker to an office used only by male employees, meaning she would have to bring her uniform and toiletries to the women's locker room to change; in December 2021, LeBlanc changed Nelson's group rotation without notice, which disrupted her holiday schedule despite her seniority; in November 2021 and May 2022, LeBlanc suggested that Nelson would have to resign if, having used all of her leave time due to her pregnancy and daughter's cancer treatment, she were absent; in November and December 2021, LeBlanc denied Nelson information regarding colleagues' donating leave time to Nelson; in June 2022, LeBlanc ordered Nelson to provide a doctor's note if she had to miss a forced overtime shift due to her daughter's cancer treatment; also in June 2022, LeBlanc stripped Nelson of her firearms duties and other responsibilities without notice.  AC at p. 7-11.

When viewed in isolation, each allegation might be insufficient to support a hostile work environment claim; however, in making the assessment, the court must look at the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Gorski, 290 F.3d at 471. Overall, Nelson alleges some ten timely instances of discriminatory conduct relating to her pregnancy and responsibilities as a mother over nineteen months (from December 2020 to June 2022). LeBlanc's conduct was never physically threatening, although a fair inference is that his conduct was professionally threatening, as LeBlanc suggested twice that Nelson may be forced out of her job if she exhausted her leave time, and Nelson feared for her job as a result. AC ¶¶ 78-82. Nelson alleges that LeBlanc's conduct interfered with her physical health and work performance. Id. ¶ 157. However, Nelson did not follow some of LeBlanc's discriminatory orders and does not allege that she faced discipline for her refusal, which undercuts the severity of LeBlanc's conduct. See Westminster MTD at p. 5, 12 (Westminster argues Nelson did not move her locker to the lieutenant's office or ever provide a doctor's note for any missed forced overtime shifts despite LeBlanc's orders).

Gorski v. New Hampshire Department of Corrections is squarely on point and calls for a denial of Westminster's motion to dismiss. 290 F.3d at 446. In Gorski, the plaintiff alleged a hostile work environment created by her supervisors' animus towards her pregnancy predicated on seven instances of harassing comments. Specifically, the plaintiff alleged that her supervisors made several derogatory and disparaging comments about her pregnancy, dismissed the plaintiff's complaints of stress due to her workload because she was pregnant, and refused to transfer the plaintiff to another unit because "maybe [she] won't come back" to work after her maternity leave and "no one is going to want [her] because [she is] pregnant." Id. at 464 n.1. Based on these allegations, the First Circuit found that the plaintiff satisfactorily alleged a hostile work environment claim. Id. at 474. The allegations in Gorski are remarkably similar to

Nelson's allegations here—LeBlanc made several negative comments about officers working while pregnant, insinuated that Nelson was at risk of being forced out of her job due to her pregnancy and maternal obligations, refused to reassign Nelson to the less strenuous daytime dispatch shift while she was pregnant, and took other adverse actions against Nelson.  As in Gorski, Nelson's allegations of repeated instances of misconduct over nineteen months suffice to plead a hostile work environment claim.

"There is no mathematically precise test for determining when conduct in the workplace moves beyond the merely offensive" to create a hostile work environment.  Marrero, 304 F.3d at 18 (internal quotation marks omitted).  Eventually, Nelson will have to prove conduct "extreme enough to constitute a hostile work environment claim.  Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).  This can be a high bar to clear.  See, e.g., Rivera-Martinez v. Commonwealth of P.R., No. 05-cv-2605, 2007 WL 16069, at *3-4 (1st Cir. Jan. 4, 2007) (collecting cases from the First Circuit demonstrating the type of egregious conduct typically found actionable under a hostile work environment claim).  However, the severity or pervasiveness of a hostile work environment is best "resolved by the trier of fact."  Gorski, 290 F.3d at 474.  At this stage, the alleged conduct must merely fall within the "outer bounds" of permissible hostile work environment claims.  See id. at 471-74.  The frequency, severity, and pervasiveness of LeBlanc's misconduct satisfies the pleading threshold.

Therefore, I recommend that Westminster's motion to dismiss Count X, alleging a hostile work environment in violation of Title VII, be DENIED.

### E.  Intentional Interference with an Advantageous Relationship

LeBlanc's motion to dismiss Count V, for intentional interference with an advantageous relationship, should be denied.  Nelson alleges that LeBlanc intentionally interfered with

Nelson's employment relationship with Westminster, causing her harm. AC ¶ 140-41. LeBlanc argues that Nelson continues to be employed by WPD and defends his actions as in line with his responsibilities as Chief.[9] LeBlanc MTD at p. 15-16.

To establish a claim for intentional interference with an advantageous relationship, Nelson has the burden of showing "(1) that she had a business relationship, (2) that the defendant knew of this relationship, (3) that the defendant intentionally and maliciously interfered with the relationship, and (4) that the defendant's actions harmed her." Zimmerman v. Direct Fed. Credit Union, 262 F.3d 70, 76 (1st Cir. 2001) (citing Comey v. Hill, 438 N.E.2d 811, 816 (Mass. 1982)). Nelson has satisfied the first two factors as she was employed by the Town and LeBlanc was aware of Nelson's employment as he was her supervisor.

As to the third factor, Nelson alleges that LeBlanc maliciously interfered with her employment at WPD. Officials acting within the scope of their employment responsibilities are subject to liability if their "actions are motivated by actual, and not merely implied, malice," evinced by "a spiteful, malignant purpose unrelated to a legitimate corporate interest." Blackstone v. Cashman, 860 N.E.2d 7, 13-14 (Mass. 2007). To satisfy the third factor, Nelson must show that LeBlanc acted with actual malice resulting in a loss of advantage or damage to Nelson's relationship with the Town. See id.; Saunders v. Town of Hull, 229 F. Supp. 3d 80, 90 (D. Mass. 2017). LeBlanc argues that he cannot be deemed to have acted with malice given his actions were in line with his responsibilities as Chief as he had authority to establish municipal policies at WPD. LeBlanc MTD at p. 17.

---

[9] LeBlanc correctly argues that Nelson's intentional interference claim is governed by a three-year statute of limitations. LeBlanc MTD at p. 16. However, Nelson's allegations against LeBlanc stem from his conduct during his tenure as Chief, which began in the fall of 2020. AC ¶ 49. As Nelson filed her Complaint on June 14, 2023, the statute of limitations began to run on June 14, 2020, encompassing LeBlanc's tenure as Chief.

Nelson alleges facts sufficient to establish that LeBlanc acted with improper motive and harbored illegitimate interests in his conduct towards Nelson. Taking all inferences in Nelson's favor, LeBlanc's actions in changing the group rotation schedule and Nelson's holiday schedule, instructing Nelson to move her locker to a room occupied only by her male colleagues, requesting Nelson provide doctor's notes for future leave requests, and refusing to inform Nelson of donated leave time were all actions motivated by a spiteful, improper motive unrelated to LeBlanc's role in advancing the legitimate interests of the WPD. Indeed, after Nelson complained, Nelson was not forced to move her locker or provide doctor's notes, suggesting these requests did not serve a legitimate business or organizational purposes. Rather, a reasonable inference is that LeBlanc's primary motivator was a discriminatory animus towards Nelson, evinced by LeBlanc's numerous negative comments about Nelson, pregnancy, and working mothers. Nelson also alleges that LeBlanc did not inform her of donated leave time because he thought Nelson was "selfish" for creating a GoFundMe page. AC ¶ 90. Therefore, Nelson has plausibly alleged that LeBlanc acted with improper motive unrelated to any legitimate interests in his role as Chief.

As to the last factor, harm, Nelson has alleged that LeBlanc's actions harmed her relationship with Westminster by causing her to lose out on advantages in promotional opportunities and certain privileges of her employment. Id. ¶ 141. An employee need not be terminated from their position for harm to be found; rather, a plaintiff must allege facts sufficient to show that a defendant maliciously intended to harm the plaintiff's employment relationship. Ruffino v. State St. Bank & Trust Co., 908 F. Supp. 1019, 1051 (D. Mass. 1995). Absent allegations that a business advantage or other privileges of employment were lost, a plaintiff cannot allege he suffered harm. Kibbe v. Potter, 196 F. Supp. 2d 48, 71 (D. Mass. 2002).

Nelson's allegations that LeBlanc changed the group rotation schedule, which subsequently caused a change to Nelson's holiday work schedule, suggests that Nelson lost out on privileges of her employment and seniority she had previously enjoyed. AC ¶ 79-80. Additionally, Nelson alleges that she was denied promotion to the lieutenant position while she was pregnant. See id. ¶ 113. Nelson also intimates, and Westminster's independent investigator found, that these actions were taken with a malicious intent. Thus, Nelson has sufficiently alleged that LeBlanc's actions harmed her and satisfies the fourth factor, thereby plausibly alleging a claim for intentional interference with an advantageous relationship.[10]

Accordingly, I recommend that LeBlanc's motion to dismiss Count V, intentional interference with an advantageous relationship, be DENIED.

### F. Negligent Supervision

I recommend that Count VI, alleging supervisory negligence against Westminster, be dismissed. Nelson alleges Westminster knew or should have known about LeBlanc's

---

[10] LeBlanc presents two unpersuasive arguments in favor of dismissing Nelson's intentional interference claim. First, he argues that Nelson's state law claims are preempted by Section 301(a) of the Labor Management Relations Act ("LMRA"), which preempts claims dependent on an interpretation of a labor contract, such as a collective bargaining agreement. LeBlanc MTD at p. 18-19. Defendant's argument is without merit. The Court need not delve into the collective bargaining agreement or its grievance process to determine if Nelson plausibly alleged that LeBlanc acted with malice or without a legitimate corporate interest. Nelson's allegations, taken as true, sufficiently establish a claim for intentional interference without needing to interpret the collective bargaining agreement. I find that Nelson's state law claims should not be preempted by LMRA.

Second, LeBlanc argues that Nelson's tort claims are preempted by the FMLA, Title VII, and Chapter 151B. LeBlanc MTD at p. 17-18. Chapter 151B and Title VII are the exclusive remedies for gender and sex discrimination claims, and the FMLA's enforcement provision is the exclusive remedy for violations of the statute. See, e.g., Birnbirch v. New England Bus. Servs., No. 013471, 2003 WL 22049454, at *7 (Mass. Super. Ct. July 21, 2003) (tort claim not preempted by Chapter 151B where malice alleged was not motivated by gender); cf. McAllister v. Quality Mobile X-Ray Servs, Inc., No. 12-cv-0078, 2012 WL 3042972, at *6 (M.D. Tenn. July 25, 2012) (collecting cases where tort actions redressing only FMLA violations were preempted); Rivera-Rosario v. U.S. Dep't of Agric., 151 F.3d 34, 38 (1st Cir. 1998) ("[W]here the gravamen of the claim is Title VII discrimination, the only remedy available is under Title VII."). However, Nelson's intentional interference claim is not preempted by these statutes as it alleges a different type of wrong—Nelson alleges that LeBlanc interfered with her employment relationship with WPD because of animus and malice. Nelson need not allege that the animus or malice related to her gender or pregnancy status, as is required in a Chapter 151B, Title VII, or FMLA claim. Because Nelson's intentional interference claim need not depend on showing gender or FMLA discrimination, her claim is not preempted by the respective statutes.

misconduct and did not investigate or discipline LeBlanc until Nelson complained.  AC ¶ 142.

Westminster counters that it responded promptly to Nelson's complaints and could not have

known about LeBlanc's conduct before Nelson complained.  Westminster MTD at p. 8.

The Massachusetts Torts Claims Act ("MTCA"), provides that "[p]ublic employers shall

be liable for injury . . . caused by the negligent or wrongful act or omission of any public

employee while acting within the scope of his office or employment."  Stamps v. Town of

Framingham, 38 F. Supp. 3d 146, 161 (D. Mass. 2014) (quoting Mass. Gen. Laws ch. 258, § 2).

Negligent supervision claims are actionable only when the employer "knew or should have

known about an underlying identifiable tort which was committed by named or unnamed public

employees."  Allen v. Town of E. Longmeadow, No. 17-cv-30041, 2018 WL 1152098, at *13

(D. Mass. Feb. 9, 2018).  To bring a tort claim against a municipality, the plaintiff must first

comply with the MTCA's presentment requirement.  See Mass. Gen. Laws ch. 258, § 4.

As the Town properly points out, here, Nelson has failed to comply with this condition

precedent.  Westminster MTD at p. 6-7.  When bringing an MTCA claim, a plaintiff is required

to first present his claim in writing to an executive officer of his employer within two years after

the cause of action occurred.  Mass. Gen. Laws ch. 258, § 4.  If the claim is denied by the

executive officer, then the employee is permitted to bring suit.  Id.  "Proper presentment is

accordingly a condition precedent to bringing suit [against a public employer], and failure to do

so is fatal to the plaintiff's complaint." Drake v. Leicester, 140 N.E.3d 413, 416 (Mass. 2020).

Here, Nelson failed to meet the presentment requirement by not timely informing Westminster of

LeBlanc's conduct in writing before initiating the present suit.  As such, Nelson's negligent

supervision claim against the Town is insufficiently brought and should be dismissed.

Even if Nelson had complied with the presentment requirement, Nelson fails to plausibly allege Westminster knew or should have known of LeBlanc's tortious conduct before Nelson made the Town aware of it in July 2022.  See Westminster MTD at p. 8.  Municipalities are only liable for supervisory negligence when the municipality "allegedly had, or should have had, knowledge" of the tortious conduct.  Dobos v. Driscoll, 537 N.E.2d 558, 569 (Mass. 1989). Westminster argues, and the Complaint does not suggest otherwise, that they did not know about LeBlanc's misconduct until Nelson informed the Town.[11]  Further, as Nelson alleges, once Westminster became aware of Nelson's allegations, Westminster hired an independent investigator who promptly investigated the allegations against LeBlanc.  Westminster MTD at p. 8.  Following findings of misconduct, LeBlanc was placed on leave and then terminated.  Id. Indeed, as Westminster argues, after Nelson informed Westminster officials of the alleged misconduct and Westminster initiated an investigation, Nelson does not allege further incidents or harm.  Id. at 8-9.  As such, the Complaint fails to allege that Westminster was negligent in its duty to supervise LeBlanc or that Westminster was even aware of LeBlanc's misconduct prior to Nelson's complaints.  Thus, Nelson's negligent supervision claim against Westminster fails both on the merits and for failing to comply with the presentment requirement.

Accordingly, I recommend that Westminster's motion to dismiss Count VI, negligent supervision, be GRANTED.

## IV.    Conclusion

For the foregoing reasons, I RECOMMEND that:

---

[11] Westminster also argues that Nelson's negligent supervision claim is preempted by the FMLA, Title VII, and Chapter 151B.  Westminster MTD at p. 9.  As described supra note 9, Nelson's negligent supervision claim is not based on a theory of gender discrimination or discrimination against use of FMLA-protected leave.  Nelson's negligent supervision claim alleges just that—that the Town was negligent in supervising LeBlanc, which caused LeBlanc's intentional interference with Nelson's advantageous relationship with the Town.  The Town's cursory argument that this claim is preempted is unpersuasive.

LeBlanc's motion to dismiss Nelson's claims of FMLA retaliation (Counts I and III) and intentional interference with an advantageous relationship (Count V) be DENIED;

LeBlanc's motion to dismiss Nelson's claims of FMLA interference (Count II) and violations of the Massachusetts Civil Rights Act (Count IV) be GRANTED;

Westminster's motion to dismiss Nelson's claims of FMLA retaliation (Counts I and III), sex and gender discrimination under Chapter 151B (Count VII), Title VII retaliation (Count IX), and Title VII hostile work environment (Count X) be DENIED;

Westminster's motion to dismiss Nelson's negligent supervision claim (Count VI) be GRANTED.[12]

     /s/ David H. Hennessy
     David H. Hennessy
     United States Magistrate Judge

---

[12] The Parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), they are entitled to object to the Court's Report and Recommendation by filing a specific written objection with the Clerk of this Court within fourteen (14) days of service of this Report and Recommendation. Such written objections must specifically identify the portion of the Report and Recommendation to which objection is made and the basis for those objections. The Parties are further advised that the First Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) shall preclude further appellate review. See, e.g., M. v. Falmouth Sch. Dep't, 847 F.3d 19, 26 (1st Cir. 2017); Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988).